# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 107

Donavon Meuchel,

Plaintiff and Appellant

v.

MR Properties LLC,

Defendant and Appellee

### No. 20230211

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Bonnie L. Storbakken, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Justin D. Hager, Bismarck, ND, for plaintiff and appellant.

Blaine T. Johnson (argued) and Krista L. Christopherson (on brief), Bismarck, ND, for defendant and appellee.

**Bahr, Justice.**

[¶1]     Donavon Meuchel appeals from a judgment entered after the district court granted summary judgment to MR Properties LLC, dismissing Meuchel's action for specific performance. We conclude the court did not abuse its discretion in disregarding statements in an affidavit and in striking a late-filed supplemental affidavit. We further conclude the court did not err in granting summary judgment to MR Properties. We affirm.

I

[¶2]     MR Properties is a North Dakota limited liability company and has two members, Jessy Meyer and Nick Renner. MR Properties owned Lots 20 through 23 of the Golden West Development located in New Salem, North Dakota ("Golden West Shopping Center").

[¶3]     In March 2022, Meuchel approached MR Properties seeking to purchase the Golden West Shopping Center. Meuchel offered MR Properties $600,000 for the property, which was the asking price set by MR Properties. Meyer contacted Wade Bachmeier, an associate real estate broker, and asked him to draft a purchase agreement but did not provide specific terms for the agreement. Bachmeier prepared the purchase agreement. An initial draft of the purported purchase agreement is dated May 4, 2022. While Bachmeier prepared multiple drafts of the purchase agreement over the course of negotiations, MR Properties did not sign any version of the purchase agreement.

[¶4]     The parties subsequently discovered part of the Golden West Shopping Center building encroached on a neighboring parcel of land owned by MKB LLP, a separate entity in which neither Meyer nor Renner is a partner. Meuchel requested MR Properties acquire additional land from MKB and include it in the purchase of the property. Meuchel hired Toman Engineering to survey the additional land, which Toman Engineering did on May 19, 2022. On May 19, 2022, Meuchel and Meyer signed a "2022 Contract for Earnest Money & Down Payment," which stated:

> This agreement for earnest money/down payment, in the amount of $10,000.00, between MR Properties, LLC and Donavon Meuchel on May 19, 2022 is a withstanding contract towards the purchase of above stated

> property and property discussed with Dave Meyer until purchase agreement is reviewed & accepted between both parties.
>
> This contract is only valid until purchase agreement is accepted & signed at which time the signed purchase agreement will take effect.

Another draft of a purchase agreement is also dated May 19, 2022; neither party signed the agreement at that time.

[¶5]    In early July 2022, negotiations between Meuchel and MR Properties broke down after MR Properties discovered Meuchel had instructed Toman Engineering to modify the location of a previously agreed upon boundary line. On July 6, 2022, Meyer sent Meuchel a check for $10,000 with a letter refunding Meuchel the earnest money, stating "there is too much misunderstanding on the terms of the sale of the Golden West Shopping Mall. We feel that an agreement cannot be reached and are refunding your down [payment] money."

[¶6]    On July 21, 2022, after MR Properties returned Meuchel's earnest money, Meuchel signed a purchase agreement dated May 19, 2022. Meuchel included an addendum to the purchase agreement, dated and signed by Meuchel on July 20, 2022. This addendum stated:

> 1.    Seller shall be responsible for the repair, removal or mitigation of an abandoned Montana Dakota Utilities gas line.
> 2.    Seller shall take all steps necessary to transfer the Red Shell Roofing System Limited Warranty to Buyer, including payment of the transfer fee.
> 3.    Buyer shall allow and grant an easement for a utility corridor, running east to west along the boundary line of the property for the purpose of installation of sewer and water line's [sic] to property immediately to the west, currently owned by MKB, LLP, subject to property being purchased;
> 4.    This sale is contingent upon Buyer being able to negotiate an Agreement with MKB, LLP to remove and use fill dirt from the property owned by MKB, LLP to the west of and adjacent to the subject property being purchased herein.

MR Properties did not sign the purchase agreement or the addendum.

[¶7]    In 2022, Meuchel commenced this action against MR Properties, seeking specific performance of an alleged purchase agreement and a judgment compelling the transfer of the subject property. He requested the district court grant specific performance to require

MR Properties to sell to Meuchel the "real property subject to the purchase agreement prepared by MR Properties LLC and signed by Donavon Meuchel." MR Properties filed a motion to dismiss the action with supporting affidavits and exhibits. The court treated the motion to dismiss as a motion for summary judgment.

[¶8]   Meuchel filed responses and supporting documents opposing the motion for summary judgment. MR Properties replied and filed additional documents in support of its motion. In March 2023, Meuchel filed a supplemental affidavit. MR Properties thereafter moved to strike portions of Meuchel's November 2022 affidavit and Meuchel's March 2023 supplemental affidavit.

[¶9]   In granting summary judgment to MR Properties, the district court disregarded statements in Meuchel's November 2022 affidavit regarding his knowledge of who drafted certain documents. The court also struck Meuchel's March 2023 supplemental affidavit as untimely filed. The court concluded Meuchel failed to meet his burden to show specific performance was necessary and summary judgment was appropriate "given the lack of clearly ascertainable terms necessary to specifically enforce the alleged oral contract." The court dismissed Meuchel's claim for specific performance and entered a judgment of dismissal.

II

[¶10]  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." N.D.R.Civ.P. 56(c)(3). Our standard for reviewing a district court's decision granting summary judgment is well established:

> A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

3

*Petro-Hunt, L.L.C. v. Tank*, 2024 ND 46, ¶ 8, 4 N.W.3d 526 (quoting *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193).

[¶11] "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *Petro-Hunt*, 2024 ND 46, ¶ 9 (quoting *N. Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 11, 830 N.W.2d 556). However, "[s]ummary judgment is appropriate if reasonable minds could reach only one conclusion from the evidence submitted to the district court." *Id.* (quoting *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 17, 890 N.W.2d 222). In reviewing a summary judgment, we also consider the substantive evidentiary standard of proof. *See Workforce Safety & Ins. v. Oden*, 2020 ND 243, ¶ 29, 951 N.W.2d 187; *George v. Veeder*, 2012 ND 186, ¶ 6, 820 N.W.2d 731; *Dahl v. Messmer*, 2006 ND 166, ¶ 8, 719 N.W.2d 341.

III

[¶12] Meuchel argues the district court erred in granting summary judgment by failing to consider evidence submitted by Meuchel while considering evidence from MR Properties.

[¶13] "Under N.D.R.Civ.P. 12(f), the district court has discretion, either upon a motion by a party or on its own, to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter in a pleading." *In re Guardianship of S.M.H.*, 2021 ND 104, ¶ 24, 960 N.W.2d 811; *see also Buchholz v. Buchholz*, 2022 ND 203, ¶ 32, 982 N.W.2d 275. A court may consider a motion to strike at any time. *Buchholz*, at ¶ 32. While motions to strike are generally not favored, *Collection Ctr., Inc. v. Bydal*, 2011 ND 63, ¶ 29, 795 N.W.2d 667, we review a district court's decision to strike under N.D.R.Civ.P. 12(f) for an abuse of discretion, *S.M.H.*, at ¶ 24. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

[¶14] Rule 12(f), N.D.R.Civ.P., provides what a district court "may strike from a pleading." N.D.R.Civ.P. 7(a), identifies the "pleadings" allowed under the Rules of Civil Procedure. An "affidavit" is not a pleading under Rule 7(a). Some cases hold Rule 12(f) motions to strike only apply to "pleadings," not affidavits. *See, e.g., Lombard v. MCI Telecomm. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) ("While some courts have employed Rule 12(f) to strike an affidavit or portions thereof, there is no basis in the Federal Rules for doing so." (citation omitted)); *E.E.O.C. v. Admiral Maint. Serv., L.P.*,

4

174 F.R.D. 643, 645-46 (N.D. Ill. 1997) (Rule 12(f) cannot be invoked to strike portions of a statement of facts and an affidavit in support of a summary judgment motion because they do not constitute pleadings); *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) ("Courts . . . have been unwilling to construe 'pleading' broadly. . . . Neither of the offending items [a motion to strike and a memorandum in support] constitutes a pleading."); 2 James Wm. Moore et. al., *Moore's Federal Practice* § 12.37[2] (3d ed. 2024) ("Only materials included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." (citations and footnotes omitted)). In *S.M.H.*, this Court upheld a district court's decision striking a petitioner's affidavit from the record. 2021 ND 104, ¶ 25. Similarly, in *Buchholz*, 2022 ND 203, ¶ 33, this Court concluded the district court did not abuse its discretion in striking a party's declaration. However, the parties in *S.M.H.* and *Buchholz* did not raise, and we did not address, whether Rule 12(f) applies to affidavits and declarations. We need not decide whether Rule 12(f) applies to affidavits because Meuchel did not argue at the district court or on appeal that Rule 12(f) did not authorize the court to strike his affidavits or portions of them. This Court does not consider questions not presented to the district court and properly raised on appeal. *Bickler v. Happy House Movers, L.L.P.*, 2018 ND 177, ¶ 11, 915 N.W.2d 690 (declining to consider whether the court erred in striking an affidavit when issue was not argued below).

[¶15]   Rule 56(e)(1), N.D.R.Civ.P., provides "[a] supporting or opposing declaration must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated." A party objecting to the personal knowledge of a witness's affidavit or declaration often moves to strike the document. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012). However, rather than strike the affidavit, a district court may refuse to give the affidavit any weight when determining whether summary judgment is appropriate. *Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704, 708 (N.D. 1995) (concluding court properly refused to give affidavits not based on first-hand, personal knowledge any weight in determining whether summary judgment was appropriate); *see also Rooks v. Robb*, 2015 ND 274, ¶ 8, 871 N.W.2d 468 (concluding the court erred when it relied on an affidavit not based on personal knowledge); *McColl Farms, LLC v. Pflaum*, 2013 ND 169, ¶ 32, 837 N.W.2d 359 (concluding the court properly refused to consider an affidavit that did not contain information showing the affiant had "first-hand, personal knowledge of the relevant facts"). In *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, No. 4:08-CV-00288-SMR-HCA, 2014 WL

11514685, at *2 (S.D. Iowa Sept. 15, 2014), citing federal precedent, a federal district court explained a court may either strike the affidavit or "simply disregard" inadmissible portions:

> Affidavits that do not meet the standards of Rule 56 must be disregarded on a motion for summary judgment. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible statements in an affidavit "may not be used to support or defeat a motion for summary judgment"). When an affidavit does not meet the Rule 56 standard, the court may strike the affidavit. *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972). Alternatively, the court may simply disregard any inadmissible portions of an affidavit and reduce the weight accorded to the affidavit in the court's ruling on the motion for summary judgment. *See Estate of Butler ex rel. Butler v. Maharishi Univ. of Mgmt.*, 589 F.Supp.2d 1150, 1156 (S.D. Iowa 2008) ("Any defects are best addressed by reducing the weight accorded to the affidavit and not by striking the document in its entirety."; quoting *Pekin Ins. Co.*[ *v. Tysa, Inc.*], 2006 WL 3827232 *4); *City of Shawnee v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1177 (D. Kan. 2008) (although an affidavit that does not meet the standards of Rule 56(e) is subject to a motion to strike, "the Court may also enforce the rule by disregarding portions of the affidavit it finds insufficient"); *Sholl v. Plattform Advertising, Inc.*, 438 F.Supp.2d 1303, 1307 (D. Kan. 2006) ("the Court ordinarily does not strike affidavits but simply disregards those portions which . . . do not comply with Rule 56(e)"); *Edwards v. Texas-New Mexico Power Co.*, 259 F.Supp.2d 544, 546 (N.D. Tex. 2003) (denying motion to strike; rather than strike portions of affidavit, "court will give the summary judgment evidence whatever weight it may deserve").

In this case, the district court both disregarded portions of Meuchel's November 2022 affidavit and struck his March 2023 supplemental affidavit.

[¶16] Meuchel concedes he filed his March 2023 supplemental affidavit after the time for briefing had expired. However, he argues MR Properties also filed its motion to strike and supporting documents after the time expired. He argues the district court improperly used information from the "untimely" motion-to-strike filings to make conclusions about Meuchel's "credibility" for purposes of the summary judgment motion. *See, e.g., Martin v. Marquee Pac., LLC*, 2018 ND 28, ¶ 10, 906 N.W.2d 65 ("The district court may not weigh the evidence, determine credibility, or attempt to discern the truth of the matter when ruling on a motion for summary judgment." (quoting *Farmers Union Oil Co. of Garrison*

*v. Smetana*, 2009 ND 74, ¶ 10, 764 N.W.2d 665)). He argues the court applied different standards to the evidence and its use of one side's evidence was "fundamentally unfair."

[¶17] The district court partially granted MR Properties' motion to strike. In doing so, the court explained:

> The Court agrees certain statements in the November 17, 2022 *Affidavit,* which were later shown to lack credibility, should not be considered as persuasive by the Court. Specifically, the Court will not consider statements made within the November 17, 2022 affidavit as they pertain to Plaintiff's knowledge of who in fact drafted the documents such as the earnest money agreement, purchase agreements, and any addendums to purchase agreements contained within paragraphs 1, 7, and 13. These provisions, although not stricken will not be considered by the Court. Further, the *Supplemental Affidavit* filed [on March 2, 2023] . . . is stricken as it is untimely. . . . Plaintiff had until January 30, 2023 to file their response.

[¶18] The district court did not apply different standards to the parties' evidence. Meuchel untimely filed his March 2023 supplemental affidavit. It was within the court's discretion to strike the untimely supplemental affidavit. MR Properties' motion to strike was timely; a party may bring a motion to strike at any time. Thus, the court properly considered the evidence supporting MR Properties' motion to strike to determine whether to grant the motion to strike. Although the court explained it would not consider as persuasive statements shown to lack "credibility," the court did not "weigh" the evidence to determine summary judgment. Rather, the court disregarded the portions of the affidavit the court concluded were not based on Meuchel's personal knowledge and, thus, insufficient under N.D.R.Civ.P. 56(e). Meuchel does not assert the statements the court disregarded were based on his personal knowledge. Based on the court's order, we conclude the court only considered MR Properties' motion to strike to determine whether to grant the motion to strike; the court did not consider MR Properties' motion to strike to decide the underlying motion for summary judgment.

[¶19] The district court did not abuse its discretion in disregarding the statements in Meuchel's November 2022 affidavit and in striking his late-filed March 2023 supplemental affidavit.

[¶20] Meuchel argues the district court erred in granting summary judgment to MR Properties dismissing his action seeking specific performance.

[¶21] "Specific performance is an equitable remedy and equitable principles must be followed in its use." *Dale Expl., LLC v. Hiepler,* 2018 ND 271, ¶ 9, 920 N.W.2d 750. "Though [specific performance] is an equitable action, it is available to enforce agreements even though the injured party may have a legal remedy for damages, because in many cases an action for damages would not afford adequate relief." *Id.* (quoting *Larson v. Larson,* 129 N.W.2d 566, 567 (N.D. 1964)). In *Linderkamp v. Hoffman,* 1997 ND 64, ¶ 5, 562 N.W.2d 734, this Court explained:

> "The person seeking specific performance has the burden of proving he is entitled to it." [*Wolf v. Anderson,* 334 N.W.2d 212, 215 (N.D. 1983)]. . . . Specific performance is an equitable remedy, and equitable principles must be followed in its use. *Wolf,* 334 N.W.2d at 215. Specific performance may be denied if a contract is not fair, reasonable, and based on adequate consideration. [*Sand v. Red River Nat'l Bank & Trust Co.,* 224 N.W.2d 375, 378 (N.D. 1974)]. "And specific performance of an agreement must be denied when its terms are not sufficiently certain to make the precise act which is to be done clearly ascertainable." [*Beebe v. Hanson,* 169 N.W. 31, 32 (1918)]. To be specifically enforceable, "'[a] contract must fix the price or consideration clearly, definitely, certainly, and unambiguously, or provide a way by which it can be fixed with certainty.'" *Mandan-Bismarck Livestock Auction v. Kist,* 84 N.W.2d 297, 301 (N.D. 1957) (quoting 81 C.J.S., *Specific Performance* § 34). To be specifically enforceable, a contract "'must be complete in itself . . . at least with respect to its essential and material terms . . . The court cannot supply an important omission or complete a defective contract for the purpose of specific performance.'" *Id.* at 302 (quoting 81 C.J.S., *Specific Performance* § 35).

Specific performance rests in the district court's sound discretion. *Dale Expl.,* at ¶ 9; *Linderkamp,* at ¶ 5.

[¶22] "Generally, a contract for the sale of land is unenforceable against one who has not signed it." *Wachter Dev. L.L.C. v. Gomke,* 544 N.W.2d 127, 131 (N.D. 1996) (citing N.D.C.C. § 9-06-04). Under our statute of frauds, N.D.C.C. § 9-06-04, an agreement for the sale of real property is invalid "unless there is a contract, note, or memorandum in writing subscribed by the party to be charged." *Wachter Dev.,* at 131. Section 47-10-01,

N.D.C.C., contains an exception to this writing requirement, providing the requirement of a subscribed written instrument does not prevent a district court from compelling "specific performance of any agreement for the sale of real property in case of part performance thereof." *See Wachter Dev.*, at 131.

[¶23] "Part performance consistent only with the existence of an oral contract removes the contract from the statute of frauds." *Wachter Dev.*, 544 N.W.2d at 131 (citing *Williston Co-op. Credit Union v. Fossum*, 459 N.W.2d 548 (N.D. 1990)). "Cases accepting the doctrine of part performance have recognized three major categories of acts by the purchaser that may make an oral contract enforceable: paying the contract price, taking possession of the property, and making improvements." *Johnson Farms v. McEnroe*, 1997 ND 179, ¶ 18, 568 N.W.2d 920. While the existence of an oral contract and its terms usually present a question of fact, *Wachter Dev.*, at 132 n.2; *see also Lumley v. Kapusta*, 2016 ND 74, ¶ 6, 878 N.W.2d 65, we also consider the substantive evidentiary standard of proof in reviewing summary judgment, *see Oden*, 2020 ND 243, ¶ 29.

[¶24] This Court has explained that "[a] mere preponderance of the evidence is insufficient to establish the terms and existence of a claimed oral contract; rather, the claimed oral contract must be established by *clear and unequivocal evidence* that unmistakenly points to the existence of the claimed agreement instead of some other relationship." *Lumley*, 2016 ND 74, ¶ 6 (emphasis added). "An oral contract can be enforced only when the parties have agreed on its essential terms." *Id.* at ¶ 7.

[¶25] "The requisites for a valid contract are parties capable of contracting, consent, a lawful object, and sufficient consideration." *In re Estate of Thompson*, 2008 ND 144, ¶ 11, 752 N.W.2d 624 (citing N.D.C.C. § 9-01-02). "The parties' consent must be free, mutual, and communicated to each other." *Id.* (citing N.D.C.C. § 9-03-01). Under N.D.C.C. § 9-03-16, "[c]onsent is not mutual unless the parties all agree upon the same thing in the same sense."

[¶26] This Court said "an agreement for the sale of real property need only show who the contracting parties are, intelligently identify the subject matter involved, express the consideration, *and disclose the terms and conditions upon which the contract is entered into.*" *Hartman v. Grager*, 2021 ND 160, ¶ 33, 964 N.W.2d 482 (emphasis added). Nevertheless, the acceptance of a contract must comply with the terms of the offer and must be absolute and unqualified. *Ehlen v. Melvin*, 2012 ND 246, ¶ 10, 823 N.W.2d 780. "[A] qualified acceptance is a counter proposal." *Id.*; *see also* N.D.C.C. § 9-03-21 ("[A]n

acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest and which will conclude the person accepting. A qualified acceptance is a new proposal."). This Court has explained:

> It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into. It is not enough that there is a concurrence of minds of the price of the real estate offered to be sold.

*Ehlen*, at ¶ 10 (quoting *Greenberg v. Stewart*, 236 N.W.2d 862, 868 (N.D. 1975)). This Court has further said:

> [A]n acceptance must be absolute and unqualified or at least separable from those parts of the acceptance which are not absolute and unqualified. Thus, not every new proposal constitutes a qualified acceptance or counteroffer. An acceptance is not necessarily invalidated by proposing changes or additions. . . . An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.

*Id.* at ¶ 10 (quoting *Stonewood Hotel Corp., Inc. v. Davis Dev., Inc.*, 447 N.W.2d 286, 290 (N.D. 1989)).

[¶27]  It is undisputed MR Properties did not sign a purchase agreement for the Golden West Shopping Center. Thus, the requirements of N.D.C.C. § 9-06-04 are not met.

[¶28]  The earnest money contract, signed by Meuchel and Meyer, is not an agreement for the sale of the Golden West Shopping Center. The earnest money contract does not contain essential and material terms of any purchase, and by its plain terms anticipates a future "purchase agreement [being] reviewed & accepted between both parties." The subsequent purchase negotiations and addendum signed by Meuchel, all of which are undisputed, further demonstrate the earnest money contract was not a purchase agreement and did not contain the essential and material terms of any purchase.

[¶29]  Meuchel argues he signed the May 19, 2022 purchase agreement on July 21, 2022, and that the agreement sufficiently identified the parties, the price, and the land to be

purchased. However, that purchase agreement was not signed by MR Properties, and MR Properties withdrew the purported offer before Meuchel "accepted" it. *See* N.D.C.C. § 9-03-23(1) ("A proposal is revoked . . . [b]y the communication of notice of revocation by the proposer to the other party in the manner prescribed by sections 9-03-17 and 9-03-19 before the latter's acceptance has been communicated to the former[.]"). Moreover, assuming for the sake of argument the May 19, 2022 purchase agreement was an offer, Meuchel did not absolutely and unqualifiedly accept the purchase agreement. Meuchel's addendum proposed additional purchase terms and conditions. By deviating from the terms of the purchase agreement, Meuchel rejected the offer, making it not binding on MR Properties. At best, by signing the May 19, 2022 purchase agreement and the July 20, 2022 addendum, Meuchel made a counteroffer to purchase the property.

[¶30] Finally, Meuchel asserts the district court was required to accept his unsupported assertion that the parties entered into an oral purchase agreement. However, based on the undisputed facts, a reasonable juror could not conclude an oral contract existed that clearly, definitely, certainly, and unambiguously established the essential and material terms of the sale of the Golden West Shopping Center. The undisputed facts show there was disagreement as to the specific property to be sold (the property line) and MR Properties' obligations.

[¶31] On our de novo review, the record does not provide any "clear and unequivocal" evidence showing a meeting of the minds or mutual consent between the parties to establish an oral contract. The "part performance" relied upon by Meuchel is also insufficient to raise a material fact issue as we conclude reasonable minds could reach only one conclusion from the evidence before the district court, *i.e.*, there was no mutual consent to support the existence of an oral contract. Because the record does not establish the existence of a genuine issue of material fact of an oral contract between the parties, the court did not err in granting summary judgment to MR Properties on Meuchel's claim for specific performance.

V

[¶32] We have considered the parties' remaining arguments and conclude they are not necessary to our decision or are without merit. We affirm the judgment.

[¶33] Jerod E. Tufte, Acting C.J.
        Daniel J. Crothers

11

Lisa Fair McEvers
Douglas A. Bahr
Allan L. Schmalenberger, S.J.

[¶34] The Honorable Allan L. Schmalenberger, S.J., sitting in place of Jensen, C.J., disqualified.